IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

NORTHEASTERN DIVISION

| | |
|---|---|
| **RAY KELLER and WADE SARTIN**, Individually and on Behalf of All Others Similarly Situated, <br><br>Plaintiffs, <br><br>vs. <br><br>**POWER BALANCE, LLC** a Delaware Limited Liability Company, <br><br>Defendant. | Case No: <br><br>**CLASS ACTION COMPLAINT** <br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs and proposed Class representatives Ray Keller and Wade Sartin ("Plaintiffs"), individually and on behalf of all others similarly situated, based on information and belief and investigation of his counsel, except for information based on personal knowledge, hereby alleges:

### INTRODUCTION

1.  Plaintiffs Ray Keller and Wade Sartin bring this class action complaint against Defendant Power Balance, LLC ("Power Balance" or "Defendant") for Defendant's false and misleading claims concerning its holographic wristbands and pendants, which Power Balance claims "help to promote balance, flexibility, strength, and overall wellness."

2.  This Complaint seeks to remedy the unfair, deceptive, and unlawful business practices of defendant Power Balance LLC ("Defendant") with respect to the marketing and

sales of its wristbands, pendants and other jewelry with "Mylar Holograms" and the holograms themselves (the "Products"). The Products are marketed and advertised as improving balance, strength, flexibility, endurance, and stamina. These claims, however, are not true, and Defendant has no basis for these representations. In fact, Defendant recently admitted that "there is no credible scientific evidence" to support these claims, and that Defendant "engaged in misleading conduct" in marketing the Products. Plaintiffs and the Class would not have purchased the Products but for Defendant's false promotion of the illusory benefits.

3. As independent scientific studies have proven, the Products are no more effective at improving an athlete's performance than ordinary rubber jewelry. Nevertheless, Defendant charges significantly higher prices for the Products than ordinary rubber jewelry. Defendant has thus fraudulently induced Plaintiffs and the class to pay more for the Products based on purported qualities that do not exist. Given the absence of any additional benefit of the Products beyond ordinary rubber jewelry, reasonable consumers, including Plaintiffs and the Class, would not have purchased the Products, or would not have paid such a high price for the Products, but for Defendant's false promotion of the Products' illusory benefits.

4. Defendant's false advertising campaign has been extraordinarily successful. Sales of the Products have skyrocketed from $8,000 in 2007 (the first year the Products were sold) to an estimated $35 million in 2010.

5. In a response to an Australian governmental investigation Power Balance made this statement:

> In our advertising we stated that Power Balance wristbands improved your strength, balance, and flexibility.
>
> We admit that there is no credible scientific evidence that supports our claims....

6. Defendants disseminated its deceptive marketing claims throughout the United States, including in the State of Alabama, Europe, Australia, and Asia through its website,

product packaging, in store displays, live exhibitions, paid testimonials, press releases and other forms of marketing and advertising, all representing that the "Mylar Holograms" contained in every Power Balance Band provided physiological benefits such as:

a) Power Balance holograms are embedded with frequencies that react positively with your body's natural energy field to improve balance, strength and flexibility;

b) Power Balance products boost the body's self defense mechanisms creating the immediate benefits of strength, balance and flexibility gain;

c) When the hologram comes into contact with your body it gives you added balance, strength, flexibility; and

d) Power Balance holograms are designed to work with your body's natural energy field.

7. In reliance on Defendant's deceptive and misleading advertising and marketing campaigns, Plaintiffs, and the class members they seek to represent, purchased the Power Balance Bands and have been harmed in the amount of the purchase price of the Power Balance Bands.

## JURISDICTION

8. This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(a) & (d) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and is a class action in which members of the Class of plaintiffs are citizens of states different from Defendant. Further, the Class members all reside in a state other than the state in which Defendant is domiciled.

## VENUE

9. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Alabama and because Defendant:

(a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in the Northern District of Alabama;

(b) conducts substantial business in the Northern District of Alabama; and

(c) is subject to personal jurisdiction in the Northern District of Alabama. The Court has personal jurisdiction over Defendant because it is a corporation that has sufficient minimum contacts in Alabama, or otherwise intentionally avails itself of the Alabama market through its marketing and sales of the Products in the State of Alabama, and/or by having such other contacts with Alabama so as to render the exercise of jurisdiction over it by the Alabama courts consistent with traditional notions of fair play and substantial justice.

## **PARTIES**

10.     Plaintiff Ray Keller is a resident of Jackson County, Alabama and purchased one or more of the Power Balance Products. Plaintiff Keller purchased his Power Balance Bands at in the State of Alabama. Prior to purchasing the Products, Plaintiff reviewed Defendant's advertising falsely claiming that the Products would improve his balance, strength, flexibility, endurance, and stamina. Had Plaintiff known that the Products do not improve athletic performance or health whatsoever, Plaintiff would not have bought the Products or would not have paid such a high price for the Products.

11.     Plaintiff Wade Sartin is a resident of Jackson County, Alabama and purchased one or more of the Power Balance Products. Plaintiff purchased his Power Balance Bands from the internet and had the product shipped to him in the State of Alabama. Prior to purchasing the Products, Plaintiff reviewed Defendant's advertising falsely claiming that the Products would improve his balance, strength, flexibility, endurance, and stamina. Had Plaintiff known that the Products do not improve athletic performance or health whatsoever, Plaintiff would not have bought the Products or would not have paid such a high price for the Products.

12.     Defendant Power Balance is a Delaware Limited Liability Company, headquarted at 30012 Ivy Glenn, Suite 180 Laguna Niguel, California 92677. At all material times, Power Balance manufactured, marketed, advertised, and distributed it Power Balance Bands to consumers at retail outlets throughout the State of Alabama, United States, Europe, Australia, and Asia.

## BACKGROUND FACTS

13.     Defendant markets the Products as high-end athletic "Performance Technology." Since beginning to sell the Products in 2007, Defendant has employed and continues to employ a wide-ranging advertising campaign that includes use of internet, television, radio, magazine, and direct mail advertising.

14.     In recognition of the fact that consumers would otherwise be unwilling to spend significant sums of money on cheap rubber or plastic jewelry, Defendant's advertising of the Products center around the alleged athletic performance and other physiological benefits of the Products.  To that end, Defendant pays significant sums of money to celebrity athletes to endorse the Products, including NBA basketball stars like Shaquille O'Neill, Lamar Odom, and Derek Rose, NFL football stars like Drew Brees and Vernon Davis, and Major League Baseball stars like Ricky Romero and Shane Victorino.  In a further effort to boost the Products' image as enhancing athletic performance, Defendant recently entered into a marketing agreement with the owners of the Sacramento Kings pursuant to which the Kings' home arena will be named the "Power Balance Pavilion" as of March 1, 2011.

15.     Since beginning to sell the Products in 2007, Defendant has made uniform representations regarding the Products' alleged athletic performance and other physiological benefits on its web site, on the web sites of third party retailers, on the Products' packaging, on brochures distributed with the Products, in print publications, on in-store displays, through paid celebrity testimonials, and in other forms of marketing and advertising.  For example, the Products' packaging includes various uniform and prominent representations regarding the Products' alleged benefits, including but not limited to:

    a.    "Power Balance Is Performance Technology."

    b.    "Power Balance Performance Technology for sports and everyday life."

    c.    "The new hologram technology from the US is used by top athletes worldwide."

    d.    "Most users report increased performance."

16.    Defendant also distributes brochures with the Products that include various uniform and prominent representations regarding the Products' alleged benefits, including but not limited to:

    a.    "Balance · Strength · Flexibility"

    b.    "Power Balance Is Performance Technology."

    c.    "Designed to work with your body's natural energy field."

    d.    "How long does Power Balance® last? Our holograms are made to last indefinitely, but product lifespan depends on the amount and type of usage."

    e.    "Is it only beneficial to athletes? Power Balance® was originally designed to help professional athletes perform at their best, but its benefits have been documented by people of all walks of life. No matter whether you're looking for better balance and flexibility or need renewed strength and stamina, Power Balance can help."

    f.    "Can it get wet? Yes. Power Balance® works in water . . . ."

    g.    "Does the product need to touch my skin? No, it does not need to touch the skin, although it does need to be within contact of the body's natural energy field. This varies from person to person, but typically ranges from one to three inches from the skin."

    h.    "'Power Balance gives me an edge.' Ekolu Kalama [professional surfer]."

    i.    "'Power Balance is the next level.' Lamar Odom [NBA star]."

      j.      "'It is amazing how I feel better, stronger and more flexible when I exercise. I especially feel a difference on the track.' Rubens Barrichello [Formula One racing driver]."

      k.      "'With Power Balance I have the ability to maintain top level performance.' Pri Lima [beach volleyball player]."

      l.      "'Power Balance is a remarkable product. Not only does it help me and my team with our balance and endurance on the ice, it also helps my mom live and feel better in her daily routine.' Teemu Selanne [NHL hockey player]"

17.    Other uniform and widely distributed representations that Defendant has made regarding the Products' alleged benefits include:

      a.      "Power Balance holograms are embedded with frequencies that react positivitely with your body's natural energy field to improve balance, strength and flexibility."

      b.      "Power Balance holograms are designed to work with your body's natural energy field."

      c.      "The hologram in Power Balance is designed to respond to the natural energy field of the body. The Mylar material at the core of the Power Balance has been treated with energy waves at specific frequencies. The resulting Mylar is believed to resonate and work with your body's natural energy flow to help enable you to perform at the best of your ability."

      d.      "The benefits of Power Balance's performance technology are being enjoyed by hundreds of elite athletes around the world."

      e.      "Tens of thousands of Power Balance fans around the world – from pro athletes to regular people – report having experienced excellent balance, strength and flexibility when wearing a Power Balance product."

f. "Why was Power Balance created? For centuries many people – including practitioners of many Eastern philosophies – have practiced different methods to seek to optimize the body's natural energy flow. Power Balance was created as an easy and affordable method for the public to enjoy. The idea and subsequent investigation of ways to seek to optimize the body's energy flow is not a new concept. It has been pursued in many ways over hundreds of years. Power Balance has created products designed to respond with your body's natural energy flow in a simple and affordable way.

g. "Will wearing Power Balance Make Me Stronger, More Balanced and Gain Greater Flexibility? Power Balance will not make you stronger than you are, but is designed to help make you as strong as you should be by interacting with your body's natural energy flow."

h. "Power Balance products boost the body's self defense mechanisms creating the immediate benefits of strength, balance and flexibility gain."

i. "When the hologram comes into contact with your body it gives you that added balance, strength, flexibility."

j. "Our products are based on the idea of optimizing the body's natural energy flow, similar to concepts behind many holistic and Eastern philosophies."

k. "Use of the Power Balance results in lots of endurance and stamina."

l. "Made by athletes for athletes, Power Balance™ is a favorite among elite competitors, weekend warriors and every day fitness enthusiasts."

m. "Power Balance™ atheletes believe in the product, for them performance is critical to their success."

    n.     "The company was created out of the principal that the founders wanted everyone, no matter what their level of activity, to maximize their potential and live life to the fullest."

    o.     "How long does it last? The holograms are designed to last indefinitely."

    p.     "Created by athletes dedicated to holistic care, Power Balance is a Performance Technology that is a favorite among elite athletes and individuals that strive to perform at the top of their game, no matter what it is. We're helping people excel with a revolutionary technology that's changing the way people live, work and play."

    q.     "We started out with a single mission – bring out the best in people by bringing science and nature together. What we've been able to accomplish is extraordinary."

    r.     "Power Balance is committed to bringing our wearable technology to everyone so each individual can maximize their potential and live life to its fullest."

    s.     "Thanks to a committed team dedicating themselves to keeping Power Balance the leader in performance technology, we've expanded our product line to fit everyone's budget, style and need."

    t.     "Find your perfect balance. Power Balance."

    u.     "What does it do? The Power Balance bracelet contains a Mylar hologram designed to react with the body's natural energy flow."

18.    Defendant's representations regarding the Products' ability to improve balance, strength, flexibility, endurance, and stamina are false. Defendant has no factual basis to make these claims.

19.    The Australian government has concluded that Defendant's advertising of the Products' benefits is misleading and deceptive, and that Defendant did not and does not have "any credible scientific evidence" nor "any reasonable grounds" to support its representations

regarding the Products' alleged benefits.  On or about December 21, 2010, in response to the Australian government's investigation, Defendant issued a corrective advertisement stating:

> "In our advertising we stated that Power Balance wristbands improved your strength, balance and flexibility.  We admit that there is no credible scientific evidence that supports our claims and therefore we engaged in misleading conduct in breach of s52 of the Trade Practices Act of 1974."

Defendant also offered a full refund for the purchase price of the Products to any of its Australian customers.

20. While Defendant was "unreservedly" apologizing to its Australian customers for its misrepresentations and offering them a full refund, Defendant continued to disseminate the same misrepresentations to its American customers and continued to profit off of those misrepresentations.  In fact, at the same time Defendant was correcting the misstatements it had made to its Australian customers, Defendant issued a statement regarding the Australian case on the American version of its web site in which Defendant indicated that it "stands by its products," and that it "has made no claims that our product does not perform . . . Our products are based on the idea of optimizing the body's natural energy flow . . . [O]ur products are used by those with open minds who experience real results."

21. In furtherance of its scheme to market the Products' ability to improve balance, strength, flexibility, endurance, and stamina, Defendant has also disseminated videos of the so-called "Power Balance® Tests" in which actors demonstrate the alleged benefits of the Products by performing various physical activities first without wearing the Products and then repeating those same activities while wearing the Products.  In each of these "tests," the actors appear to perform the activities better while wearing the Products.

22. In an effort to determine the Products' effectiveness at performing as advertised, exercise physiologists at the University of Wisconsin-LaCrosse ("UW-L") have tried to replicate Defendant's "Power Balance® Tests."  In a double-blind study in which neither the examiners nor the test subjects knew whether the test subjects were wearing the Products or a cheap rubber

bracelet, test subjects were asked to perform the same physical activities twice – once while wearing the Products and once while wearing a placebo. UW-L researchers found that the test subjects always performed the physical activities at issue (which were designed to replicate those in Defendant's "Power Balance® Tests") better the second time irrespective of whether the subjects were wearing the Products or a placebo. UW-L researchers attributed this so-called "order effect" to the facts that the test subjects were warmed up the second time and had practiced and were prepared for the specific physical tasks at issue. UW-L researchers concluded that the Products made "absolutely no difference" on the test subjects' performance and that the Products are an "absolute scam."

23. Plaintiffs based the purchase of the bands on the claims of the Defendants marketing.

## CLASS ACTION ALLEGATIONS

24. Plaintiffs brings this suit as a class action pursuant to Federal Rules of Civil Procedure 23, on behalf of himself and the class defined as follows:

> ***All persons in the United States who purchased any Power Balance product between January 1, 2007 and the present day.***

25. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the class may be expanded or narrowed by amendment or amended complaint.

26. Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.(the "Class").

27. The Class is sufficiently numerous, as it includes thousands of persons who have purchased the Products. Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules

of Civil Procedure. The disposition of the Class members' claims in this class action will substantially benefit both the parties and the Court. The members of the Class are readily ascertainable from Defendant's records and other appropriate discovery.

28. There are questions of law and fact common to the Class for purposes of Federal Rule of Civil Procedure 23(a)(2). Defendant utilizes advertisements and packaging that include uniform misrepresentations that misled Plaintiffs and the other members of the Class. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

29. Plaintiffs asserts claims that are typical of the claims of the entire Class for purposes of Federal Rule of Civil Procedure 23(a)(3). Plaintiffs and all Class members have been subjected to the same wrongful conduct because they have purchased the Products that do not perform in the manner that Defendants represent. Plaintiffs and the Class have thus all overpaid for the Products.

30. Plaintiffs will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiffs has no interests antagonistic to those of other Class members. Plaintiffs are committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent him. Plaintiffs anticipates no difficulty in the management of this litigation as a class action.

31. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Defendant utilizes advertising campaigns that include uniform misrepresentations that misled Plaintiffs and the other members of the Class.

32. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact substantially predominate over any questions that

may affect only individual members of the Class. Among these common questions of law and fact are:

(a) whether Defendant advertises and markets the Products by representing that the Products improve balance, strength, flexibility, endurance, and stamina;

(b) whether the Products in fact have benefits beyond those of ordinary cheap rubber jewelry;

(c) whether Defendant's marketing and advertising is likely to deceive the Class;

(d) whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

(e) whether Defendant's conduct results in aggregate loss by the Class in excess of $5 million;

(f) whether Defendant's conduct in advertising and marketing the Products constitutes a violation of the CLRA;

(g) whether Defendant's conduct constitutes fraudulent, unfair, or unlawful conduct as defined by the UCL; and

(h) whether Plaintiffs and Class members are entitled to injunctive and other equitable relief.

33. Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims is concerned. Absent a representative class action, Class members would

continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of their ill-gotten gains. Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other Class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

## FIRST CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

**(Plaintiffs, On Behalf of Himself and the Class)**

34. Plaintiffs realleges and incorporates herein by reference paragraphs 1 through 33 of this Complaint.

35. Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased Power Balance Bands. The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels and through its marketing campaign, as described above.

36. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class and the Defendant.

37. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the product which could provide the benefits described above.

38. As a result of Defendant's breach of its contract and warranties, Plaintiffs and the Class have been damaged in the amount of the purchase price of Power Balance Bands they purchased.

Wherefore, Plaintiffs prays judgment against Defendant, as set forth hereafter.

## SECOND CAUSE OF ACTION

## RESTITUTION/ UNJUST ENRICHMENT

### (Plaintiffs, On Behalf of Himself, the Class, and the General Public)

39. Plaintiffs realleges and incorporates herein by reference paragraphs 1 through 38 of this Complaint.

40. Plaintiffs and the Class have conferred a benefit upon Defendant. Defendant has received and retained money belonging to Plaintiff and the Class as a result of its unlawful and fraudulent practices.

41. Defendant appreciates or has knowledge of said benefit.

42. Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as result of its actions.

43. Plaintiffs and the Class have suffered financial loss as a direct result of Defendant's conduct.

44. Plaintiffs on their own behalf and on behalf of the Class, seeks the imposition of a constructive trust and restitution of the proceeds of Defendant received as a result of its conduct described herein, as well as attorneys' fees and costs

Wherefore, Plaintiffs prays judgment against Defendant, as set forth hereafter.

## THIRD CAUSE OF ACTION

## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT

### (Plaintiffs, on behalf of themselves as a private right of action)

45. Plaintiffs reallege and incorporates herein by reference paragraphs 1 through 44 of this Complaint.

46. The defendants have violated the Alabama Deceptive Trade Practices Act, Alabama Code § 8-19-1, et seq., in connection with the sale and advertisement of the Power Balance Bands to Alabama consumers.

47. As alleged above, the defendants' representations regarding the quality and ability of their wristbands violated Section 8-19-5.

48. Plaintiffs, therefore, brings this private action under Section 8-19-10 to recover their actual, statutory, and/or treble damages as may be awarded.

49. In addition, Plaintiffs were exposed to Defendants' uniform advertising campaign claiming that the Power Force Bands provided health benefits in which they did not

50. By the conduct alleged above, Defendants have each engaged in a scheme to cheat a large number of consumers out of individually sums of money.

Wherefore, Plaintiffs prays judgment against Defendant, as set forth hereafter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment and relief against Defendant on behalf of himself and the Class as follows:

A. That the Court certify this case as a class action on behalf of the Class defined above, appointing Ray Keller as class representative, and appointing his counsel as class counsel;

B. That the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising and other violations of law described in this Complaint;

      C.      That the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits, and quality Defendant has claimed;

      D.      That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

      E.      That the Court order Defendant to notify each and every individual and/or business who purchased the Products of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

      F.      That the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading advertising, , plus pre- and post-judgment interest thereon;

      G.      That the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of their acts or practices as alleged in this Complaint;

      H.      Awarding Plaintiffs and the class Punitive damages;

      I.      Awarding attorneys' fees and costs;

      J.      Awarding Plaintiffs and the Class pre and post judgment interest to the extent allowable;

      K.      Enter such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

      L.      That the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all causes of action so triable.

DATED:  January 25, 2011                    Respectfully Submitted,


                                              s/ E. Kirk Wood
                                             E. Kirk Wood (ASB-2397-W55E)
                                             Michael E. Gurley, JR (ASB-8147-E53G)
                                             Attorneys for Plaintiffs


**OF COUNSEL:**

**E. Kirk Wood**
Wood Law Firm, LLC
P.O. Box 382434
Birmingham, Alabama 35238-2434
Telephone:  (205) 612-0243
Facsimile: (866) 747-3905
ekirkwood1@bellsouth.net

**MICHAEL E. GURLEY, JR**
Wood Law Firm, LLC
P.O. Box 382434
Birmingham, Alabama 35238-2434
Telephone:  (205) 908-6512
Facsimile: (866) 747-3905
mgurleyjr@yahoo.com


## REQUESTS FOR SERVICE BY CERTIFIED MAIL

Pursuant to MRCP 4.1 and 4.2, Plaintiffs request service of the foregoing Complaint by certified mail.

                                       By:    s/ E. Kirk Wood
                                                  E. Kirk Wood
                                                  Michael E. Gurley, JR
                                                  Attorneys for Plaintiffs


## SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:

Power Balance, LLC
30012 Ivy Glenn, Suite 180
Laguna Niguel, CA 92677